**114**

2003 OK CIV APP 104

**Kirk ERICKSON and Orel C. Dugger, Plaintiffs/Appellants,**

v.

**CITY OF TAHLEQUAH, Oklahoma and Jerry Cook, Mayor, Defendants/Appellees.**

**No. 98,151.**

Court of Civil Appeals of Oklahoma, Division No. 3.

Sept. 2, 2003.

Certiorari Denied Dec. 1, 2003.

Monte W. Strout, Tahlequah, for Plaintiffs/Appellants.

Weldon W. Stout, Wright, Stout, Fite & Wilburn, Muskogee, William H. Bliss, Tahlequah, for Defendants/Appellees.

Michael Minnis, David McCullough, Jason Thompson, Michael Minnis & Associates, P.C., Oklahoma City, for Amicus Curiae Oklahoma Press Association.

BUETTNER, J:

¶1 On August 6, 2001, the City of Tahlequah approved a resolution calling for a special election for the purpose of increasing the city sales tax by 1/2 of one percent. Tahlequah did not follow the law's requirement that notice of a special election be given by publishing the resolution at least ten days before the date of a special election in a newspaper of general circulation in the municipality. Consequently, the election is void. We therefore reverse the trial court which found "substantial compliance" with the election law and validated the election.

¶2 The election was held October 9, 2001 and, by an eleven vote margin, the proposal passed. The sales tax was to last for up to two years beginning January 1, 2002, and the purpose was to make a gift to the Regents of Northeastern State University, located in Tahlequah, for renovations of athletic facilities. Legal notice of the special election was published about a month after the election.

¶3 Tahlequah is a charter city and its charter provides that the election laws of the State of Oklahoma are applicable.[1] Title 11 O.S.1991 § 16–101 states:

> Notice of a general municipal election or a special election shall be given by publishing the resolution of the municipal governing body calling for the election. The resolution shall set forth:
>
> 1. The date or dates of the election; and
>
> 2. The offices to be filled or the questions to be voted upon at the election.

---

1. The City makes a half-hearted argument that the applicable Charter provision only applies to elections for municipal officers. However, the cited provision, after referring to elections for municipal officers then states: "and where applicable all provisions of the election laws of the State shall govern at all elections held by the City of Tahlequah." No other authority is cited. We hold that state election laws applied to the special election.

The resolution shall be published in a newspaper of general circulation in the municipality at least ten (10) days before the beginning of the filing period for a general municipal election, or at least ten (10) days before the date of a special election. If there is no newspaper of general circulation in the municipality, the notice shall be given by posting a copy of the resolution in at least five (5) public places in the municipality.

¶ 4 Until *Walker v. Oak Cliff Volunteer Fire Protection District,* 1990 OK 31, 807 P.2d 762,[2] was decided, Oklahoma followed a long line of cases applying the concept of "substantial compliance" to the notice provisions of special election laws. *Town of Grove v. Haskell,* 1909 OK 236, 104 P. 56, states the principles in its syllabus:

> ... but where, in a controversy arising out of an election held, it is shown that the provisions in reference to notice were substantially complied with, and there is no averment or showing that the electors did not have actual notice or knowledge of the election, and failed to participate therein by reason thereof, the same will not be held void or set aside. The vital and essential question in such cases is, Did the want of notice or knowledge result in depriving a sufficient number of the electors of the opportunity to exercise their franchise as to change the result of the election? If not then the will of the electors, as expressed, should be sustained.

> \* \* \*

> Elections are the ultimate expression of the sovereign will. When fairly expressed—that is, free from taint of fraud or charge of improper conduct—it becomes the duty of courts to sustain them, where it can be done by a liberal construction of the laws relating thereto, rather than defeat them by requiring a rigid conformity to technical statutory directions, which do not affect the substantial rights of the electors. All reasonable presumptions as to their regularity will be indulged, and the penalty of disfranchisement will not be visited upon a qualified voter where he is not at fault, except in response to a plain mandatory requirement of the statute.[3]

¶ 5 "Substantial compliance" and a presumption of regularity of special elections gave way to "strict compliance" with respect to the statutory notice requirements and special elections when *Walker* was decided. The governing body must adhere to the mandates of proper notice and of publication in a newspaper of general circulation in the municipality. If there is no newspaper of general circulation in the municipality, then notice may be given by posting in five public places in the municipality. There are no other statutory methods of giving notice of a special election.

¶ 6 *Walker* involved a special election to establish a fire protection district. It was undisputed that there was no compliance with the statutory notice requirements. Title 19 O.S.1981 § 901.1 et seq. authorized creation of fire protection districts by land title holders of unincorporated parts of a county. With respect to notice of a special election for establishing the fire protection district, 19 O.S.1981 § 902.3 required the county clerk to cause notice of the election to be given by publication once a week for two successive weeks in a newspaper of general circulation in the territory comprising the proposed district. The notice had to contain the time and place of the election and the boundaries of the proposed district. Despite the fact that no proper statutory notice was given, there was an article about the proposal in the newspaper of the county seat the day before the election and an advertisement for ballot bids was also published. The date of the election was included in the two items. The minutes of the county commissioners' meetings were published in the newspaper of

---

2. See Justice Simms dissent in *Walker,* 1990 OK 31, 807 P.2d at 769.

3. *Town of Grove* involved a special election to change a county seat. The proclamation for the election required publication of the proclamation for six weeks in the Grove *Sun,* and posting of the proclamation for six weeks in certain designated towns. Newspaper publication was accomplished as required, but the postings were between five and six weeks. Thus, the deficiency was a shortened notice period rather than no compliance at all.

the county seat three times before the election. Members of the volunteer fire department passed out flyers house-to-house in the proposed district and notices were sent home with school children riding buses in the proposed district. The trial court found these efforts constituted substantial compliance with the notice requirement. In reversing, the Oklahoma Supreme Court stated at ¶ 1, p. 765, "We find: 1) that an election to create a fire protection district is void unless it is preceded by publication notice for two weeks in a newspaper of general circulation in the territory comprising the proposed district as required by 19 O.S.1981 § 901.3; ...."[4] The *Walker* Court explained that special elections are not set on a date certain and voters might not be aware that an election is scheduled. A relaxed standard might apply to general elections because the public is presumed to know when the election is to be held. Underlining a salient point, the *Walker* Court stated at ¶ 9, p. 766, "Even if the Court were to adopt substantial compliance as a standard of review, the election would still be invalid. *The record reflects that there was absolutely no compliance with the statutory required notice.*" (Emphasis in original.)

¶ 7 The facts in the case at bar are similar to those in *Walker*. A special election was approved by the municipal governing body, but there was no attempt *by that body* to comply with the statutory notice requirements. The council's meeting minutes were published five times, there were yard signs about the proposed sales tax, there were letters to the editor, for and against the tax, and there was testimony from an official that the voter turn-out was average for a special election. There were articles in newspapers, there were "vote yes" advertisements in newspapers, there were "vote yes" stickers which were worn to civic meetings, there were flyers handed-out at high school tail gate parties, and there were radio ads. A sample ballot was posted at the county election board.

---

4. The second holding in the *Walker* case is: "2) that equity will intervene to cure defects in elections called to form fire protection districts even

¶ 8 The Oklahoma Supreme Court's holding in *Walker* compares "publicity" to the statutorily required notice and states: "Obviously, newspaper articles, comments, or similar publicity cannot lawfully substitute for the mandatory requirements of 19 O.S. § 901.3." 1990 OK 31, ¶ 9, 807 P.2d at 766. There was certainly substantial publicity regarding the special election in Tahlequah. However, the governing body did not comply with the statutory notice requirement in any manner. This is not a case of defective statutory notice giving rise to a question of substantial compliance. Rather, there was no required notice given at all. We are obligated to follow *Walker*. The special election is void.

¶ 9 We REVERSE the order of the trial court, and remand the case to the District Court for further proceedings consistent with this opinion.

ADAMS, P.J., and JOPLIN, C.J., concur.

---

though 26 O.S.1981 § 8–109 precludes contesting the election."